Richardson, J.,
delivered the opinion of the court:
On the 6th of June, 1873, Andrew C. Bradley entered into and’ executed an indenture with the Postmaster-General, leasing to the United States, for the uses of the Post-Office Department, certain premises in Washington, designated as “ house No. 915 E street, northwest,” for three years from June 5,1873, with the privilege of renewal for two years, at an annual rental of $4,200, payable quarterly, on the first day of September, December, March, and June in each year, and the Postmaster-General took immediate possession, and has ever since used the same for the purposes of his department.
Among the agreements therein is the following:
“And it is hereby mutually understood and agreed, by and between the parties hereto, that this lease is made subject to an .appropriation by Congress for the payment of the rental herein stipulated for, and that no payment shall be made to said party of the first part on account of such rental until such appropriation shall be available, and that, as soon as practicable after such appropriation shall become available, the arrears of the rent then due shall be paid in full, and thereafter payment shall be made at the times and in the manner hereinbefore stipulated.”
At the time this lease was made the following provisions of .staute law were in force:
“ It shall not be lawful for any department of the government to expend in any'one fiscal year any sfim in excess of appropriations made by Congress for that fiscal year, or to involve the government in any contract for the future payment of money in excess of such appropriations.” (Act July 12, 1870, ch. 251, § 7, 16 Stat., 251, now Revised Statutes,. § 3679.)
*174 “No contract or purchase shall hereafter be made, unless the same be authorized by law or be under an appropriation adequate to its fulfillment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, or transportation, which, however, shall not exceed the necessities of the current year.” (Act March 2,1861, ch. 84, § 10,12 Stat., 220, now Devised Statutes, § 3732.)
In view of these stringent provisions, if not from the language of the lease itself, we are of opinion that in entering into this contract the Postmaster-General, with great caution and prudence, had the clause above referred to inserted for the very purpose of not involving or seeming to involve the United States in any liability beyond the will of Congress to be directly expressed thereon, and of having the payment of rent depend wholly upon appropriations therefor by the legislative branch of the government, and that such purpose was fully accomplished by the terms of the agreement to which the parties assented.
. The claimants allege that Congress by its subsequent action, has committed the defendants to the payment of rent at $4,200 a year for the whole term of three years therein specified, and that they are liable for that amount each year whether Congress appropriates the money or not. That such is the legal effect of the statutes upon which the claimants rely we cannot agree.
In the Act of June 20, 1874, ch. 338 (18 Stat. L., 107), making-appropriations for expenses of the government for the year ending June 30, 1875, there is an appropriation “for rent of house numbered 915 E street, northwest, $4,200”; and in the deficiéncy appropriation Act of June 22,1874 (18 Stat., 144), is the following clause:
“For rent of house numbered nine hundred and fifteen E street, northwest, for further accommodation of the clerical force of the department, from June sixth, eighteenhundred and seventy-three, to June thirtieth, eighteen hundred and seventy-four, four thousand four hundred and eighty-eight dollars and eighty-six cents; and hereafter no contract shall be made for the rent of any building or part of any building in Washington, not now in use by the government, to be used for the purpose of the government, until an appropriation therefor shall have been made in terms by Congress.”
By these two acts Congress made available appropriations for the payment of rent to the end of the second year of the lease, in accordance with the terms of the contract, making the payment subject to such action; but this cannot be held to be an agreement on the part of Congress that it would appropriate *175 $4,200 for tlie next year, nor that tbe defendants should be liable for tbe rent for that year whether an appropriation should be made or not, nor do those acts constitute a waiver in any particular of the provision that the lease is made “subject to an appropriation by Congress for the payment of the rental therein stipulated for, and that no payment shall be made to said party of the first part on account of such rental until such appropriation shall be available,” as it is, in effect, alleged by the claimants.
And the clause which prohibits for the future any contract for the rent of any building in Washington, not then used for the purposes of the government, until an appropriation therefor shall have been made in terms by Congress, does not carry with it the slightest implication that the defendants were bound in that or any other such conditional contract beyond the amount appropriated.
Both of the above-named sums were paid- according to the terms of the appropriations, and no controversy arises thereon.
Then came the Act of March 3,1875, ch. 129 (18 Stat., 3G7), with this clause inserted therein:
“For rent of house numbered nine hundred and fifteen E street, northwest, eighteen hundred dollars: Provided, That the above sum shall not be deemed to be paid on account of any lease for years of said building: Provided, however, That at the end of the present fiscal year the Postmaster-General be directed, upon the demand of the lessor, to 'deliver up the possession of said premises.”
Thereby Congress determined to permit the Postmaster-General to continue in possession of the premises another year only on condition that the rent should be $1,800; for which an appropriation was made. That was more tlian three months before the year was to commence, and notice was thereby given to the lessor substantially that upon dem and made uponthe Postmaster-General, possession of the property should be delivered up, or the defendants would continue in possession at the rent specified at the option of the claimants.
No demand for redelivery of the premises having been made, the claimants must now be held to have assented to the terms offered by Congress for the rent of the premises for the year ending June 30,187G.
It will be observed that the Postmaster-General did not make an agreement for the payment of a fixed rental for three years *176 .and submit tlmt agreement to Congress for ratification. What was submitted to Congress by the parties was the right to make or refuse appropriations, which are well known to be annual and not for three years at one time; and it was expressly stipulated, as we have before shown, that no rent should be paid until an appropriation should be available. This was quite a different condition from that which is assumed and relied upon in the argument as having been created by the contract and subsequently complied with, a condition of approval or ratification by Congress which, when once performed, would render the defendants liable for the whole term of three years. The question of ratification of the lease is really not involved in the case, because, even if it were ratified, the fact still remains that the very terms of the instrument are that Congress shall first make an appropriation before any rent is payable, and those terms would not be annulled or altered, but would be adopted by a ratification of the lease, and would continue in force as a condition precedent to the claimant’s right of recovery.
The facts do not present a case of implied contract to pay the rentable value of the property for use and occupation, nor a case of hardship which might have existed if the claimant’s property had been retained until the expiration of the third year before the determination of Congress to appropriate less than the lease specified was made known, for the claimant was duly and reasonably notified by a public act several months before the third year commenced of the amount it had appropriated and would x>ay; and thus Congress did more for the claimant’s interest than it was called upon to do by the agreement in offering to surrender the premises if the lessor was not content with the amount thus made available for the payment of rent.
In the case of Churchwardens v. The Queen (1 Law Reports, Queen’s Bench, 1865, p. 199), which was a petition of right against the Crown, upon a contract made by the commissioners of admiralty, wherein, for the performance of certain service, they agreed to pay “ a sum of money to be provided by Parliament, after the rate of £18,000 per annum, by quarterly payments,” the court held that the liability for payment depended upon Parliament first providing the money. The language of Chief Justice Coclcburn, in giving his opinion, is singularly applicable to the points involved in this case. He sa5rs: “ We start *177 with this, that there is involved in this contract the possibility of Parliament refusing to find the fund. The commissioners do not make themselves, nor their department, nor the Crown answerable for a default in the payment of the £18,000 a year to the contractor. It is left to Parliament to find the funds, and in that is necessarily involved the jAossibility of Parliament, in the exercise of its absolute power, refusing to do so; and, in point of fact, Ave cannot shut our eyes to the fact, because I think it sufficiently appears from this record and the acts of Parliament referred to that Parliament has refused to find the funds.”
In the case at bar, Congress has refused to furnish the necessary funds to pay the $4,200 demanded, but has appropriated $1,800, and to that extent the claimants are entitled to recover, and judgment will be entered in their favor for that amount.