## JOHN H. WILSON *v.* LORD-YOUNG ENGINEERING COMPANY, LIMITED, A CORPORATION, MARSTON CAMPBELL, SUPERINTENDENT OF PUBLIC WORKS OF THE TERRITORY OF HAWAII, J. J. FERN, MAYOR OF THE CITY AND COUNTY OF HONOLULU, ANDREW ADAMS, T. H. PETRIE AND S. C. DWIGHT, LOAN FUND COMMISSIONERS, AND J. H. FISHER, AUDITOR OF THE TERRITORY OF HAWAII.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED APRIL 9, 1912. DECIDED APRIL 23, 1912.

### ROBERTSON, C. J. PERRY AND DE BOLT, JJ.

OFFICERS—*letting of public contracts.*

> Under a statute providing for the letting of public contracts to the lowest responsible bidder, the refusal of the awarding officers to award a contract to the lowest bidder can be justified only when it has been made to appear upon a public hearing and investigation conducted with fairness, impartiality and thoroughness that he is not a responsible bidder.

SAME—*meaning of "responsible bidder".*

> The phrase "responsible bidder" means one who is not only financially responsible, but who is possessed of the judgment,

Wilson v. Lord-Young Engineering Co., 21 Haw. 87.

skill, ability, capacity and integrity requisite and necessary to
perform the contract according to its terms. In determining the
question of the responsibility of a bidder awarding officers have
a wide discretion, but that discretion must be exercised fairly,
honestly and judicially.

SAME—*uncertainty in specifications.*

The specifications for a public contract upon which bids are
requested should include every element essential to furnish a
common standard by which to measure the respective bids, and
where they are so indefinite or misleading as to prevent real com-
petition between the bidders, no valid contract can be based upon
them. Where, in a call for tenders for the construction of a road,
no time was fixed within which the work should be completed, but
the bidders were required to state in their bids the time in which
they would agree to complete the work, and neither the call for
tenders nor the specifications stated the value which would be
placed upon the difference in time, and the awarding officers were
not bound to consider the difference in time in which the bidders
agreed to complete the work in determining who was the lowest
bidder, held that the specifications were fatally defective and no
contract could be awarded on them.

OPINION OF THE COURT BY ROBERTSON, C. J.

This is an·appeal from a decree of a circuit judge, sitting in
equity, whereby the respondents were perpetually enjoined from
performing, or partaking in the performance of, a certain con-
tract for the construction of a public road in the City and Coun-
ty of Honolulu. The contract was awarded to the respondent,
Lord-Young Engineering Co., Limited, by the respondents
Campbell, Fern, Adams, Petrie and Dwight, acting as a com-
mission appointed pursuant to section 5, Act 166 of the Laws
of 1911. The complainant, who was an unsuccessful bidder
for the contract, brought this suit as a taxpayer alleging that
he and not the Lord-Young Engineering Co. was the lowest
responsible bidder. The statute (Act 62 of the Laws of 1909,
as amended by Act 47 of the Laws of 1911,) provides that, with
certain exceptions, no expenditure of public money where the
sum to be expended shall be one thousand dollars or more shall
be made except under contract let after public advertisement

for sealed tenders, and that all such contracts shall be made with the lowest responsible bidder after publication for not less than ten days of such call for tenders. The complainant's contentions were that the commission, in determining who was the "lowest responsible bidder" was charged with the duty of granting a hearing before arriving at a conclusion, and was required to make a fair and reasonably thorough investigation of the facts before making a decision; also that the specifications accompanying the call for bids were fatally uncertain in not stating a time in which the contract must be completed. The circuit judge, without passing on the question of the validity of the specifications, based his decree on the point that the decision in favor of the Lord-Young Engineering Co. was of no validity for the reason that in determining the question before it the commission had acted in secret and without granting an open hearing before making an award.

Additional facts are to be found stated in the opinion of Mr. Justice Perry wherein also are contained our reasons for holding that the specifications upon which the bidders based their tenders were so indefinite and uncertain in respect to the time within which the contract was to be performed as to prevent real competition between the bidders, and that a valid contract could not be founded on them. That ground alone is enough to require the affirmance of the decree, but in view of the importance of the case because of the fact that public contracts are constantly being let by officers acting under the statute here involved we deem it our duty to express our views with reference to the procedure followed by the commission in considering the bids and awarding the contract in question.

The trial judge found as a fact that the complainant was the lowest responsible bidder and the finding was fully supported by the evidence. That alone would not, however, be conclusive of the complainant's right to the relief sought because if upon a fair and impartial public hearing the commission had found up-

on any substantial evidence that the complainant was not a responsible bidder, though the lowest, that finding, though erroneous, would not be disturbed by the court in the absence of a showing of fraud, or collusion, or arbitrary action amounting to fraud. It is admitted that the consideration and determination of the question of the complainant's responsibility was done, not at an open meeting of the commission, but behind closed doors. But it is argued that if in fact the investigation was fair, impartial, and sufficiently thorough, the decision ought not to be disturbed for the reason alone that the meetings were not open to the public. Assuming, without deciding, that the point is well taken, and conceding that there was no evidence that any improper motive influenced the action of the commission, yet the record shows that the investigation made was not conducted with that fairness, impartiality and thoroughness which should characterize proceedings of a judicial or quasi-judicial nature. At the meeting of the commission at which the bids were opened a general discussion was had in the course of which the statement was made that Wilson had failed to fulfil certain contracts which had been awarded him at previous times, but no action with reference to awarding a contract was taken. At the next meeting, after further discussion, the chairman was directed to investigate and report as to the responsibility as contractors of the three lowest bidders. At the third meeting the chairman made a verbal report, the substance of which, after the meeting, was reduced to writing, and appears in the minutes of the proceedings of the commission as follows:

"THE LOAN FUND COMMISSION,

CITY AND COUNTY OF HONOLULU.

GENTLEMEN:

At a meeting of this Commission held on September 29th, 1911, I was authorized and directed to investigate the responsibility as contractors of Mr. Theo. Bauman, the Lord-Young Engineering Company, Limited, and Mr. John H. Wilson.

I beg to make the following report:

I have found no record of irresponsibility on the part of Theo. Bauman as a contractor. I am informed by credible business men that his record is good.

So far as I can learn the Lord-Young Engineering Company, Limited, also has a good record for responsibility as contractors, as an instance of which it is stated that although they are reported to be losing on one of their operations by contract, namely the Hilo Breakwater, now under way, they are continuing to perform their obligations in good faith. Our engineer, Mr. Gere, has a criticism of Mr. Young's attitude toward the Queen Street paving proposition for the City and County Government, but I did not understand Mr. Gere to question the responsibility of the firm as contractors.

I am informed that Mr. J. H. Wilson has failed to complete two contracts which he has undertaken, one for the County of Kauai, and one for the Territory. I have sent a wireless message to the Vice-Chairman of the Kauai Board of Supervisors, asking for information bearing on the Kauai contract. I am informed that the County of Kauai was not put to additional expense by the failure of Mr. Wilson to complete his contract. I understand Mr. Wilson claimed that certain machinery used by him was not delivering the guaranteed amount of material and that, therefore, he could not perform the work as rapidly as he had expected to be able to do. I understand also that the County Government of Kauai caused an engineer to be sent to them from Honolulu and that after certain repairs were made to the machinery it was found to have the capacity of delivering a greater amount of material than was required. I understand further that the Kauai authorities claimed the machinery had not been properly operated by the contractor. I would state that I am informed that the machinery used by Mr. Wilson on the Kauai contract under question is a duplicate of the plant which the Supervisors of the City and County of Honolulu will lend to this Commission for use on Section No. 1 of the Oahu Belt Road, the bids for the construction of which are now being considered by this commission.

I quote the following from a published report of the Superintendent of Public Works, now incorporated in the public records, under the title

'Loan  Appropriations.

Completion  and  Extension  of  Sewerage,  Honolulu.

A  contract  was  made  July  5th,  1899,  with  J.  H.  Wilson
under  the  firm  name  of  Wilson  &  Whitehouse,  for  the  con-
struction  of  the  Outfall  Sewer,  the  same  to  be  completed  July
1st,  1900,  but  his  progress  was  so  slow  that  at  the  expiration
of  the  time  specified  little  had  been  accomplished  beyond  laying
that  part  of  the  Outfall  which  consists  of  vitrified  pipe,  a  length
of  1500  feet  in  shallow  water,  and  his  methods  were  so  mani-
festly  inadequate  for  the  carrying  out  of  the  work,  that  on  Sep-
tember  10th,  the  contract  was  taken  away  and  the  work  contin-
ued  by  the  Government.    The  completion  of  his  contract  would
have  entitled  him  to  receive  a  total  amount  of  something  in  ex-
cess  of  $28,000.    The  actual  payment  made  to  him  under  the
contract  amounted  to  $6,656.60.'

I  am  informed  that  since  the  last  above  mentioned  contract
Mr.  Wilson  has  performed  satisfactory  work  by  contract  on
Maui,  and  also  that  under  the  last  Board  of  Supervisors  he
completed  the  Kahana  beach  contract  on  this  island  to  the  sat-
isfaction  of  the  Supervisors.

Respectfully  submitted,

ANDREW  ADAMS.

Honolulu,  October  3rd,  1911.''

In  addition  to  what  is  contained  in  the  written  report  it  ap-
pears  that  the  chairman  stated  that  he  had  been  told  by  W.  E.
Rowell,  who  was  superintendent  of  public  works  at  the  time  of
the  letting  of  the  outfall  sewer  contract,  that  Wilson's  bid  for
the  work  was  ridiculously  low  and  his  methods  were  all  wrong,
but  that  he  did  not  blame  Wilson  as  he  thought  no  man  could
have  done  the  work  for  the  amount  of  the  bid.    The  chairman
also  stated  that  he  was  informed  that  Wilson's  bondsmen  on
that  contract  had  lost  about  twenty-one  hundred  dollars  which
Wilson  had  never  made  good;  that  in  connection  with  the  road
contract  on  the  island  of  Kauai  the  Hawaiian  Sugar  Company
had  lost  four  hundred  dollars;  and  that  the  manager  of  the  com-
pany's  plantation  had  stated  that  he  did  not  care  to  have  any
further  business  connection  with  Wilson.    It  was  not  explained

how the Hawaiian Sugar Company became concerned with Wilson in the contract referred to, nor how the loss was incurred. The chairman further reported that Mr. Gere, the county engineer, said that that part of the Kauai road which was built by Wilson was known as the best part of the road; and he quoted Mr. Gere as saying of Wilson that "He was a very good man, he could do the work if you keep after him, but you had to keep after him all the time to get the work done." Two members of the commission expressed their opinions to the effect that they did not regard Wilson as a responsible bidder. Another member took the opposite view, urged the fact that Wilson had satisfactorily executed several road building contracts and suggested that Wilson be given a hearing. At the conclusion of the discussion the commission decided by a vote of four to one to award the contract to the Lord-Young Engineering Company as the lowest responsible bidder.

The testimony given by the chairman of the commission before the circuit judge shows that in making the investigation he did not have in mind Wilson's financial responsibility nor his ability and skill to do the work. He seems to have regarded those qualifications as being conceded. He testified that his inquiries were directed solely to the question whether Wilson was "the type of man who stood from under when he got into a hole," or would "live up to his contracts whether pinched or not."

The evidence shows that the principal charges made against Wilson—and the only charges which need be referred to here—were his failure to complete the work under the outfall sewer contract and the Kauai road contract. With reference to those matters neither the commission or its chairman made any attempt to get from Wilson any statement as to why he failed to carry out his contracts. No opportunity was given Wilson to present his side of the case though he was available and, appar-

ently, anxious to explain. At the hearing in the court below Wilson testified in explanation as to why he had not fulfilled those two contracts and adduced testimony of disinterested witnesses as to his skill, ability and experience as a builder of roads, as well as to his business integrity, and if an opportunity had been given him to present the evidence to the commissioners it would probably have sufficed to convince them of Wilson's responsibility. The commission's investigation was not a thorough one. Its action was arbitrary and unfair because it was done in secret and was based on what amounted to no more than an *exparte* hearing at which no opportunity was offered for an explanation or a showing of any kind to be made by or on behalf of the lowest bidder in the interest of the taxpayers. *Chippewa Bridge Co.* v. *Durand,* 122 Wis. 85; *State* v. *Commissioners,* 39 Oh. St. 188, 192; *Faist* v. *Hoboken,* 72 N. J. L. 361; *Jacobson* v. *Elizabeth,* 64 Atl. (N. J.) 609.

In considering tenders for public contracts under a statute providing for the letting of contracts to the lowest responsible bidders, the awarding officers have a wide discretion. But that discretion must be exercised fairly, honestly and judicially. The phrase "responsible bidder" means one who is not only financially responsible, but who is possessed of the judgment, skill, ability, capacity and integrity requisite and necessary to perform the contract according to its terms. The duty of such officers in considering and determining those matters is an important and responsible one, and one upon the performance of which the taxpayers have the right to insist. The refusal to award a contract to the lowest bidder can be justified only when it has been made to appear upon a proper hearing and investigation that he is not a responsible bidder. 2 Dillon, Mun. Corp. (5th ed.) Sec. 811.

The decree appealed from is affirmed.

*R. B. Anderson* (*Kinney, Prosser, Anderson & Marx* on the brief) for complainant.

Wilson v. Lord-Young Engineering Co., 21 Haw. 87.

*E. W. Sutton, Deputy Attorney General (Alexander Lindsay, Jr., Attorney General, with him on the brief), for respondents Oahu Loan Fund Commissioners.*

### CONCURRING OPINION OF PERRY, J.

One of the grounds of the petition is that the contract and the award are null and void for the reason that "the said specifications and advertisement for bids were indefinite, uncertain and incomplete in that they did not name any time within which the work thereunder was required to be completed and did not state whether or not the time for completing the work named by a bidder would be considered by the commissioners in determining the lowest responsible bidder or provide any means of fixing or estimating the value in money of the difference in time between the several bids so that intelligent and exact bidding and fair and equal competition was impossible, and it was and is impossible for the commissioners to definitely ascertain who among the bidders for said contract was, in fact, the lowest responsible bidder therefor." The published call for tenders required that all bids for the construction of the road should be filed with the commission on or before September 28, 1911. The Lord-Young Engineering Company offered to do the work specified for the sum of $79,710 and to complete it by September 1, 1912. The complainant presented a bid in the sum of $79,367, performance to be completed by December 1, 1912. Other bids in due form, with time of completion, were those of T. Bauman, $88,950, September 30, 1912; L. M. Whitehouse, $93,518, October 31, 1912; Concrete Construction Company, Limited, $91,462, October 31, 1912, and the Honolulu Draying & Construction Company, $109,250, January 31, 1913.

The specifications related to the grading, metaling and oiling of 26,358.7 linear feet of highway, the construction of culverts, drains, ditches and walls, the removal and erection of fences

and the making of other improvements incidental to the construction of the road and contained, inter alia, the following provision: "Each bidder shall state in his proposals (1) a specific sum for which he will furnish all labor, tools and material, except as specified to be furnished by the City and County of Honolulu, necessary to complete the work according to the plans and these specifications; (2) the time within which he will agree to complete the work." The published call for tenders contained the same provision and in the form of bid prescribed by the commission was the following clause on the subject: "I hereby agree to fully complete the work specified on or before the ......... day of .........., and that for each and every day thereafter that the contract remains uncompleted the sum of twenty ($20.00) dollars shall be deducted from the amount due on said contract, and it is hereby expressly understood and agreed that said sum shall be deemed and taken in all courts to be the liquidated damages for the non-completion of the work in the time aforesaid and not in the nature of a penalty." In none of these three instruments was any further specification or statement set forth relating to the time of the completion of the performance of the contract.

Act 166 of the Laws of 1911, appropriating $200,000 for "belt roads and bridges" in the City and County of Honolulu, provides in section 3 that "the provisions of Act 62 of the laws of 1909, and amendments thereto, shall apply to all said items to the same extent as if they were a part of this Act", with exceptions not material to this case. Act 62 of the Laws of 1909, as amended by Act 47 of the Laws of 1911, in turn provides that "no expenditure of public money * * * where the sum to be expended shall be One Thousand Dollars ($1,000.00) or more, shall be made, except under contract let after public advertisement for sealed tenders, in the manner provided by law," and that "all such contracts * * * shall be made with the lowest responsible bidder and after publication of a call for

tenders for not less than ten days in a newspaper of general circulation printed and published within said Territory." In other words, expenditures under the appropriation referred to can be incurred only under contract with the lowest responsible bidder after an advertised call for tenders. Such statutory provisions are based upon motives of public economy and originate in some degree of distrust of the officers to whom the duty to make contracts for the public service is committed. *Frame v. Felix,* 167 Pa. St. 47. Their object is "to prevent favoritism, corruption, extravagance and improvidence in the awarding of all public contracts. * * * A fair competition among the bidders is the prime object of such statutory provisions and anything which tends to impair this is illegal. * * * Such a provision requires such information to be put within the reach of bidders as will enable them to bid intelligently and will enable the official having charge of the proposed work to know whose bid is the lowest." *Lucas v. American-Hawaiian Engineering & Construction Company, Limited,* 16 Haw. 80, 90. As stated in another case, the objects sought are "to secure to the state the benefit and advantage of fair and just competition between bidders and at the same time close, as far as possible, every avenue to favoritism and fraud in its varied forms * * * and to insure the accomplishment of the work at the lowest price by subjecting the contract for it to public competition. * * * In order to effectuate this it is manifest that where something is to be done that is required to be submitted to competition every essential part of it that goes to make up the whole of it must be submitted to such competition." *Frame v. Felix,* supra. "The character of the work and the materials of which it shall be composed must be decided in advance." *Lucas v. Construction Co.,* supra. So also should the specifications include every other element essential to furnish a common standard by which to measure the respective bids. The use in the statute of the expression "lowest (responsible) bidder" neces-

sarily implies as much. Any indefiniteness in the specifications permitting of favoritism or rendering it impossible to determine by a common standard which is the lowest bidder frustrates the purpose of the statute and invalidates the award and contract. *Mazet* v. *Pittsburgh,* 137 Pa. St. 548; *Ertle* v. *Leary,* 114 Cal. 238; *Ricketson* v. *Milwaukee,* 47 L. R. A. (Wis.) 685; *Chippewa Bridge Co.* v. *Durand,* 99 N. W. (Wis.) 603. "Genuine competition can only result when parties are bidding against each other for precisely the same thing and on precisely the same footing." *Lucas* v. *Construction Co.,* supra.

The specifications in the case at bar fail in at least one respect to comply with these requirements. They are indefinite and misleading with reference to the time within which the contract is to be performed. The natural inference from what is said in the specifications, form of bid and call for tenders is that time will be deemed of importance by the commission and will be considered in making an award, but of how much importance and of what monetary value it would be impossible for intending bidders to ascertain from those instruments. Each bidder was left at liberty to name his own time. Within certain limits, at least, a shortening of the period for construction would ordinarily result in greater cost to the contractor and consequently to the taxpayers and a lengthening of it in a decrease of the cost. Each of the bidders made his tender in ignorance of the time to be named by each of the others and was given no opportunity of meeting opposing bids upon the same allowance of time. The commission did not express itself in the instruments under consideration as being bound to consider the element of time and it was open to it either to consider or to disregard the differences in the bids in that respect and, if the element was taken into consideration, to give as great or as low a monetary value to the difference as it should see fit. The specifications and advertisement left the commission at liberty to choose either a bidder who had named the lowest price and

Wilson v. Lord-Young Engineering Co., 21 Haw. 87.

a longer period of time or one who had named a higher price and the lowest period of time. The case at bar furnishes a good illustration of the purpose and necessity of specifications concerning this element. With a difference of only $343 between the two leading bids would not the commission be justified in regarding that of the Lord-Young Company as the lowest and most favorable to the taxpayers? The difference in time between these two bids is ninety-one days. Would it not be reasonable for the commission to find that the use of the highway by the public during that period of time was well worth more than $343, and that the cost to the taxpayers of a capable officer to inspect the progress of the work during that period would exceed that sum? On the other hand, the commission was at liberty under the specifications and advertisement in spite of these considerations to award the contract to Wilson for the reason that the sum of money named by him was $343 less than that of his competitor. There was an opportunity for favoritism and the City and County did not have the benefit of real competition measured by a common standard with the bidders on precisely the same footing. It is not an answer to this to say that the undisputed evidence was that the commission did not attach any importance to the differences in time. It is, at best, difficult for one to say with precision what motives impel his acts. Aside from that, however, the vice was in the specifications at the time of the call for tenders and in the tenders when filed and cannot be cured by the subsequent action or inaction of the commission. The absence of genuine competition still exists. Nor is it an answer that the bidders themselves filed their bids without raising the objection or that this complainant apparently did not appreciate its force until after the respondents' answers were filed. The defect in the specifications and its consequences to the taxpayers are not for that reason any the less real.

*Kneeland* v. *Furlong*, 20 Wis. 460, is a case in which it was held, under a charter provision substantially like that of our statute, that the time of performance is an essential element to be named in such specifications. The court says: "Work cannot be let to the lowest bidder, within the meaning of the city charter, unless the bidders are informed before bidding of the terms or principal stipulations of the contract each successful bidder is to enter into. Bidders should be informed either by the notice of the letting or by the specifications * * * of the terms of the contract; at least of the quality or amount of work, whenever it can be specified, to be included in any one contract; the time within which it is to be finished; the manner in which it is to be done; and, if materials are to be furnished, their quality. All this we think the charter requires."

To furnish a common standard for the competition either a reasonable time should be named in the specifications for the performance of the contract (or two or more alternative, reasonable periods), or, if the bidders are left to name the proposed time of completion, the specifications should state the value of the difference in time between bids and thus furnish the means of reducing the bids to a common standard of measurement, or if one or more periods for performance are specified liberty may be given to the bidders to name a different period, the value of the difference in time being in such event also stated, or it should be specified that the award will be to the bidder (responsible) naming the lowest price irrespective of the time required by him for the performance of the contract.

It is clear, without reference to the other grounds named in the bill of complaint, that the injunction prayed for and granted must stand and the contract in effect be set aside. Upon a new and valid call for tenders it may be that, aside from any question of his responsibility, Wilson will not be the lowest bidder, or it may be that, if he is the lowest bidder, the commissioners will find him to be the lowest responsible bidder and that fur-

ther evidence on the issue of his responsibility, whether for or against him, will be adduced before the commissioners or before the trial judge in a suit for injunction or before both and it may also be that the commissioners, in the light of the contentions and arguments in this case on the subject of the secrecy of their meetings in the past, will adopt for the future a different view of their rights and their duty in that respect.

Under these circumstances I base my concurrence in the affirmance of the decree upon the sole ground that the specifications were fatally defective and the award and the contract for that reason invalid. Consideration of the other grounds is unnecessary to the decision of the case now before the court.