ÁTKINSON, Judge,
delivered tbe opinion of the court:
The plaintiff company sues the United States to recover the sum of $39,938.54 growing out of the construction of a Government lighthouse at Point No Point, on the Patuxent Biver near its junction with the Chesapeake Bay in the State of Maryland.
On January 2, 1902, claimant company entered into a written contract with the United States, through Lieut. Col. W. A. Jones, engineer of the fifth lighthouse district, to furnish all the materials, labor, etc., necessary to completely construct the above-mentioned lighthouse within the period of one year for the sum of $38,880.
The specifications required the lower part of the structure to consist of a square wooden caisson, provided with a working chamber and air shaft. On the roof of this caisson was to rest a cast-iron foundation cylinder, trumpet-shaped on top, which, after being sunk to the proper depth below the bottom of the bay, was to be filled as follows: The working chamber of the caisson and a part of the air shaft with concrete, the four segmental parts of the foundation cylinder with sand and large stones, and the rest of the cylinder with concrete, except the spaces for cisterns and cellar. The caisson, after being moored over the correct place, the one staked out by the Lighthouse Board, was to be lowered by gradually extending the cylinder and the air shaft in the height and filling in with concrete, in manner and in detail described at length in the specifications.
The plaintiff company constructed a pier on piles extending out a considerable distance into the Patuxent River, where the lighthouse was to be erected, and early in April, 1903, the caisson was towed from Solomons Island, 18 miles distant, to the place of permanent location on the Patuxent River. When the caisson reached said pier, April 3, the water was very rough, which caused the caisson to tip and turn over, thereby crushing the pier and sending it to the bottom of the river with all the machinery, material, and other appliances thereon belonging to the plaintiff company, causing a loss to it of about $11,108.82, as shown by Finding Y. The caisson drifted down the river and into the Cheaspeake Bay, and *184 after an effort extending over two days and one night, by means of a tugboat chartered by plaintiff, it was recovered in a damaged condition and returned to Solomons Island near the point from which it had drifted. On October 22, 1903, after it had been repaired, it was towed back to the lighthouse site and an effort was again made to place it in position. The work of filling the concrete in the caisson was stopped on November 16 by the Government superintendent, because, as he claimed, the concrete was not up to the standard required by the specifications, and a delay of 55 days in the work was occasioned thereby, viz, from November 16, 1903, to January 11, 1904. On said latter date Lieut. Col. W. A. Jones, engineer in charge, visited the site of the work, approved the concrete, although he stated that it was not fully up to the required standard, and accordingly allowed the work to proceed.
It was for a time believed by the contractors, that the caisson could be put in place without the aid of a pier, but during the 55 days’ delay occasioned by the rejection of the cement referred to above, a new and stronger pier was constructed; and, unfortunately for the contractors, it was, on February 14, 1904, carried away by a flood of water and ice in the Patuxent River, occasioning an additional loss to the plaintiff company of about $4,550, as set forth in Finding VII. It is contended by plaintiff that the refusal of the Government inspector to allow the use of concrete, which it maintains was in accordance with the specifications, causing the delay of 55 days in the prosecution of the work, as herein-before stated, resulted in an actual loss to it of $9,800.
The contract required the completion of the work in 12 months, and it is apparent that under ordinary circumstances and conditions that period of time would have been sufficient. The following provisions, however, were inserted in the contract to provide for the unforseen:
“Provided, however, that if the party (or parties) of the first part shall by freshets, ice, or other force or violence of the elements, and by no fault of their own, be prevented either from commencing or completing the work or delivering the materials at the time agreed upon in this contract, *185 such additional time may, in writing, be allowed him or them for such commencement or completion as, in the judgment of the party of the second part, or his successors, shall be just and reasonable, any additional expense incurred by the United States on account of inspection or otherwise during the extension to be deducted from the contract price of the work.
“It is further understood and agreed that in case of failure on the part of the party of the first part to complete this contract as specified and agreed upon, that the said United States shall have the right to recover any or all damages incurred by reason of said failure by the party of the first part, and shall also have the right to recover whatever sums may be expended by the party of the second part in completing the said contract in excess of the price herein stipulated to be paid to the party of the first part for completing the same.”
It is further shown by the findings that after the brealdng down of the first pier, plaintiff company saw the impossibility of completing the contract within the contract period of one year, and it thereupon made a request in writing, followed by additional verbal requests, for an extension; but these requests were denied by the defendants and the completion of the contract under its terms was peremptorily demanded by the engineer in charge. The work, however, went on, and it was finished one year and four months after the period for its completion fixed by the contract. It is, therefore, contended by plaintiff’s counsel that inasmuch as the Government did not extend the time provided by the contract, it did not possess the lawful right to charge against plaintiff inspection charges during the delay in completing the work. This, it contends, would follow, because there are no provisions in the contract or specifications giving the right to deduct such costs upon failure to complete the contract within the time required by its terms. On the other hand, counsel for the United States insists that inasmuch as plaintiff was allowed to go on and complete its contract, although not authorized in writing so to do, yet under the provision of the contract that “ any additional expense incurred by the United States on account of inspection or otherwise shall be deducted from the contract price of the work,” it was thereby authorized to charge to plaintiff the services of the inspector during the *186 one year and four months overtime period in completing the lighthouse.
This case, in its most important feature, is identical with the, case of United States v. Gleason, 175 U. S., 588. That case contained the same provision as to granting an extension of time on account of ice, floods, etc., as we find in the contract involved in the case at bar. It was there held that “under a proper construction of the contract the right or privileges of the contractors, if they failed to complete their work within the time limited, to have a further extension or extensions of yime, depended upon the judgment of the engineer in charge when applied to to grant such extension, and that no allegation or finding is shown in this record sufficient to justify the court in setting aside the judgment of the engineer as having been rendered in bad faith, or in any dishonest disregard of the contracting parties.” It is also further stated in the opinion that it is not competent for the court to go back of the judgment of the engineer in an attempt to revise his action. This can only be done upon, proof of bad faith, or of mistake or negligence so great, so gross, as to justify an inference of bad faith; and we may add that nothing of this sort is shown in the case we are now considering. Hence, plaintiff can not be excused from carrying out the provisions of its contract by unforeseen difficulties, however great, unless performance is rendered impossible by the act of God, the law, or the other party. It is apparent, therefore, that the engineer acted within his rights when he refused to extend the time for the completion of the contract in this case, and consequently the Government can not be held liable for loss or damage that thereby resulted.
Risks were taken by the contracting company that perhaps could have been avoided, if it had not been for the time limit, of the contract. Rush work is always more or less hazardous. It proved to be so in this case. We, however, fail to see wherein blame for delay can be laid at the door of the defendants herein. It is true that there was a delay occasioned by the use of concrete which was pronounced by the inspector in charge of the work to be of an inferior quality, but under the existing conditions during that period of delay the caisson *187 could not have been securely put in place so as to resist the ice flow and freshet in the Patuxent River, which shortly thereafter followed, on February 14, destroying practically everything that had been done up to that time, and which caused the plaintiff company to begin the work anew. During said delay work was being carried on in constructing the second pier, and it does not appear that it was entirely completed before it was destroyed by ice and unusual high water in the Patuxent River, as stated above. Nor is it shown that said delay caused by the defendants was, under all the circumstances, unreasonable in duration or unjust to the plaintiff.
Plaintiff’s claim for the recovery of $500 for the substitution of one cylinder plate for another of lesser strength in the caisson, which is fully explained in Finding X, we are of the opinion should be allowed, for the reason that when a plate of an inch and half in thickness was lost by the upturning of the caisson as it was being set in place, plaintiff was directed verbally to use another of lesser thickness, not by the superintendent of construction, but by the engineer in charge; and after the same was so used and a large amount of concrete had been placed upon it in the caisson, the engineer in charge of the work, seven days thereafter, rescinded his former order by directing the plate to be removed and one of greater strength to be substituted therefor, which was accordingly done at an expense to plaintiff of $500. In the absence of fraud or gross mistake such as would imply bad faith, the judgment of an officer in charge of executing the provisions of a contract by the Government is conclusive and binding on both parties to the contract. This is elementary, and does not need the citation of authorities to sustain such conclusion.
Our decision on the whole case is that but one of the allegations in plaintiff’s petition is sustained; that the Government was not responsible for the many accidents and mishaps that attended the construction of the lighthouse in controversy, except the claim which is set out in Finding X. On this item judgment is awarded in favor of the plantiff against the United States for the sum of $500, and all other claims mentioned in the petition are accordingly dismissed.
It is so ordered.
*188 The claimant’s motion to amend the conclusion of law is overruled; the defendants’ motion to strike out certain expressions in the opinion is allowed; the former opinion is withdrawn and the foregoing opinion filed in lieu thereof.