*Frear, Prosser, Anderson & Marx* for defendant in error.

---

IN THE MATTER OF THE APPEAL OF E. J. LORD FROM A RULING OF THE AUDITOR OF THE TERRITORY OF HAWAII.

No. 1207.

TRIED JULY 23, 24, 25, 28, 29, 1919.          DECIDED AUGUST 5, 1919.

COKE, C. J., KEMP AND EDINGS, JJ.

MUNICIPAL CORPORATIONS—*contracts*.

Where there is a definite fund on hand and the receipt of additional funds is contemplated it is not illegal for the city and county authorities to let a contract obligating the City and County to the extent of the funds on hand and reserving the option to require additional work should the funds therefor be provided before the expiration of the period specified for the completion of the contract.

SAME—*same—awarding contract for public improvement*.

In the absence of any allegation or showing of fraud or collusion

on the part of the awarding authorities their decision in determining who is the lowest bidder is conclusive, the presumption being that the authorities acted faithfully and honestly and for the public good after due and full investigation of the matter.

SAME—*same*—*calling for tenders*—*modification of specifications.*

Plans and specifications for work to be done by contract requiring competitive bidding therefor cannot be changed after the call for bids has been published without readvertising, but the unauthorized attempt of the city and county engineer to require supplemental bids without advertising, after publication of a call for tenders, cannot affect the plans and specifications as theretofore adopted and approved by the proper authorities and cannot affect the validity of the bids submitted nor of the contract entered into with the successful bidder.

SAME—*same*—*time of completion of work.*

Where it is provided in the specifications that "any shortening or lengthening of the road made necessary by lack or increase of funds shall decrease or increase the period allowed for construction proportionately as may be determined by the board" and the only necessity of curtailing the work that could arise would be from the lack of funds the reasonable construction of the language quoted is that the two years period specified for the completion of the entire work should be reduced in the same proportion that the money available bears to the amount of the bid.

SAME—*same*—*method of handling excavations.*

The fact that unit prices are called for on the method of handling excavations instead of the various character of the materials to be excavated does not vitiate the specifications nor the contract based thereon.

## OPINION OF THE JUSTICES.

This is an appeal to the justices of the supreme court from a ruling or decision of the auditor of the Territory of Hawaii as provided for in section 1406 R. L. 1915. Pursuant to call for tenders duly published the board of supervisors of the City and County of Honolulu on March 4, 1919, received and opened bids for the construction of what is designated as the first unit of the belt road, Koolaupoko district, Island of Oahu. Two bids were submitted, one being that of the appellant E. J.

Lord and the other of the Hawaiian Contracting Company, Limited. The board of supervisors took up the consideration of the bids and after sundry hearings the bid of the Hawaiian Contracting Company was rejected as irregular and not in conformity with the call for tenders, the form of proposal and the specifications relating thereto, and on April 1, 1919, the board awarded the contract to the appellant E. J. Lord, who hereinafter will be referred to as the contractor. Thereupon the contractor submitted an approved bond as required and the contract for the work was duly executed by the contractor and the City and County through its authorized officers. The contract was submitted to the auditor of the Territory for his certificate as provided for in section 1420 R. L. 1915, the purpose of which was to validate the contract by showing that funds were available sufficient to cover the amount required by the contract, and the auditor on June 24, 1919, attached to the contract his certificate to the effect that there was on hand and available the sum of $281,699.58 unexpended and unapplied. The contract for the work having been duly and regularly executed by the proper city and county official and the contractor the board of supervisors instructed the city and county engineer to notify the contractor to commence work forthwith and the said engineer pursuant to said instruction did so notify the contractor on April 25, 1919; that after the receipt of said notification and on the 25th day of June, 1919, the contractor commenced work under said contract and on the 26th day of June, 1919, presented to the board of supervisors for approval his claim and demand in the amount of $78.19; that said claim was duly certified to and approved by the city and county engineer and duly approved by the board of supervisors at its meeting on June 26, 1919, and thereafter the contractor duly presented his claim to the auditor of

the Territory at the same time requesting a warrant therefor. The auditor disallowed and refused to approve said claim and refused to issue a warrant therefor and so notified the contractor by letter. From this decision of the auditor and his refusal to approve or allow the demand the contractor has appealed to the justices of this court.

In response to an order to show cause the auditor has appeared by his attorneys, and Mr. J. D. McInerny, a taxpayer of the City and County of Honolulu and a purchaser of territorial bonds sold for the purpose of raising funds to construct said belt road, was permitted to intervene. The territorial auditor interposed a motion to quash the order to show cause and the summons issued, and Mr. McInerny, by his attorney, interposed a motion to dismiss the appeal. The first motion was tacitly withdrawn and the merits of the second will be determined later on in this opinion. Thereupon the respective parties agreed upon the issues involved herein, which are as follows:

"It is contended by the auditor and denied by the appellant as follows:

"1.   That the plans and specifications are so indefinite, uncertain and ambiguous as to defeat the purpose of calling for tenders.

"2.   That the plans and specifications, together with the bids required to be filled up and filed, are so indefinite and uncertain as to render it impossible of ascertainment therefrom as to which of the competing bidders was the lowest bidder on the proposed work.

"3.   That the fact that the sum of money now available for this belt road is not sufficient to complete the entire twelve miles (the first unit) of the road, renders it impossible to ascertain as to which of the competing bidders is the lowest bidder on that portion of the road capable of being built under existing available funds.

"4.   That the said plans and specifications are such as

to enable a bidder to submit an unbalanced bid and while appearing to be the lowest bidder, he might so perform the work under and according to the said plans and specifications as to be in fact the highest bidder.

"5. That the time as attempted to be fixed by the said plans and specifications within which the contract is to be performed is so indefinite and uncertain as to prevent real competition between the bidders.

"6. That the plans and specifications and the call for tenders were illegally changed at a late hour by a private communication from the city and county engineer to two only of the bidders, which change was not publicly or otherwise advertised; and further the additional call for tenders and the change in the plans and specifications relating to the hauling of cement and/or iron as made by the letter of the city and county engineer dated Feb. 27, 1919, is so indefinite, uncertain and ambiguous as to defeat the purpose of the call for tenders and is calculated in itself and in connection with the original plans and specifications to mislead prospective bidders.

"7. That the contract incorporated in the plans and specifications, and as executed by the parties, requires the contractor to continue and complete the contract, notwithstanding any decision by the courts declaring the said contract illegal.

"8. That the contract executed by the parties does not conform in matters of substance to the plans and specifications, and to the advertised call for tenders.

"9. That the contract executed by the parties does not conform in matters of substance to the contract referred to in, and made a part of the plans and specifications and the call for tenders.

"10. That E. J. Lord to whom the contract was awarded, was not the lowest bidder."

These issues were signed by all of the parties but Mr. McInerny filed additional and separate grounds for attack upon the legality of the contract between Lord and the City and County of Honolulu as follows:

"I. The specifications upon which bids for said con-

tract were asked for are indefinite and uncertain in that (a) While time is made the essence of the contract by Section 33 of the general conditions of the specifications yet in the event of insufficient funds being available to complete the entire unit (which is the situation confronting us) the time of completion of such portion of the work as can be finished is left entirely to the discretion of the board of supervisors; (b) under said specifications, together with the form of bid prescribed, the contract might, contrary to law, be awarded to the highest instead of the lowest bidder for the work actually done; (c) that under the advertisement for bids and the specifications the respective bidders were required to make bona fide bids for the removal of material and performance of work well known by the county engineer at the time of the drawing of said specifications not to be required in the construction of the road required to be built under said contract; (d) that the necessary effect of including in said specifications work and labor known not to be required for the completion of said contract by said engineer as aforesaid was to give bidders upon said work an opportunity to make merely a nominal bid as to such work and labor.

"II. That said contract is shown by the appeal papers on file to be illegal and of no effect in so far as the obligation of the auditor to pay any sum of money thereon is concerned, the necessary certificate required to be placed thereon by said auditor before said contract can become operative not having been placed thereon.

"III. That under the appropriation act of 1918 and under the law permitting the issuance of bonds for the construction of the belt road the legislature appropriated the sum of $500,000 for a completed road extending through the districts of Koolaupoko and Koolauloa, and authorized the issuance of bonds for that purpose. There exists no authority for letting a contract except for such completed road as contemplated by the appropriation act nor in excess of the sum of $500,000 appropriated for such road."

No attempt will be made in this opinion to deal with

the issues in the order in which they appear above and only those questions which we deem sufficiently important will be discussed.

The territorial legislature at the session of 1917 by Act 215, having in contemplation the completion of a part of the belt road, made an appropriation for "Belt road, Koolaupoko and Koolauloa 500,000.00 (Said road shall be built of a suitable concrete base and a high quality of wearing surface to insure permanency)." At the special session of the legislature of 1918 the foregoing item was amended by Act 11 to read as follows: "Belt road, Koolaupoko and Koolauloa, including completion of Pali road 500,000.00 (Said road shall be built of concrete on plans and specifications to conform as nearly as may be required for military necessity)." The City and County of Honolulu authorized the territorial superintendent of public works to contract for and to purchase at San Francisco, California, iron, steel, and cement for use in the construction of said belt road of the value of $188,300.42 and by reason of the fact that the road was to be built so as to conform to the requirements of military use and the plans and specifications therefor to have the approval of the military authorities the federal war department agreed to transport, and did transport, all of said materials from San Francisco at the sole expense of the war department.

At the time the contract was submitted to the territorial auditor for certification there was a balance in said belt road fund of $281,699.58. The certificate of the auditor endorsed upon the contract reads as follows: "I certify on the date of filing this contract or agreement in the audit office there remains unexpended and unapplied a balance in the appropriation for belt road Koolaupoko and Koolauloa the sum of $281,699.58. M. G. K. Hopkins Auditor Ter. of Haw. Honolulu, T. H.,

June 24, 1919." It is urged on behalf of Mr. McInerny that this certificate is not a sufficient compliance with that portion of section 1420 R. L. 1915 which reads as follows: "No such contract shall be binding or of any force until the auditor * * * shall endorse thereon his certificate that there is an available unexpended appropriation or balance of an appropriation * * * sufficient to cover the amount required." While the call for tenders and the plans and specifications cover a section of the road twelve miles in length and the two bids therefor were in the neighborhood of $475,000, the city and county authorities realized that there were not sufficient funds to complete that entire mileage of road and expressly limited the liability of the City and County so that under no circumstances would the City and County be liable under the contract in any amount in excess of the money available. This was plainly expressed in the specifications as well as in the contract with Mr. Lord. It appears to have been in the minds of the city and county authorities that other funds might be acquired as the work progressed and in that event the right was reserved to the City and County through its board of supervisors to increase or decrease the work in accordance with the amount of money which might be available for the work. At the time the contract was let to Mr. Lord there was available for expenditure under the contract the sum of $281,699.58, and to this extent alone was the City and County obligated to the contractor under the contract. In other words, the amount required under the contract was the amount which the auditor certified to be available as the unexpended and unapplied balance of the appropriation for the belt road, which was the sum of $281,699.58. The certificate of the auditor need not be in the language of the statute. Indeed a substantial compliance with the intent of the

statute is all that is required of him and in the present
case we think the auditor's certificate did substantially
comply with the statute as it clearly discloses that the
amount of money for which the City and County is liable
under the contract was available at the time the contract
was let.

Counsel for Mr. McInerny point out that the liability
of the bidder is for the total sum bid. With this state-
ment we agree, but the liability of the City and County
only extends to the amount of money on hand and this
amount of money was certified by the auditor as avail-
able and unexpended and so far as the City and County
was obligated was sufficient to cover the amount required
under its contract with Mr. Lord.

If additional belt road funds were acquired after the
date of the contract then the City and County might exer-
cise its option to require the contractor to continue the
construction work until those funds were exhausted.
There is no vice in a provision of this nature. In fact
public contracts of this character are not uncommon.
See *Bradley* v. *U. S.,* 13 Ct. Cl. 166, affirmed in 98 U. S.
104.

Another issue herein, and which is also contained in
the letter from the auditor to the contractor, is to the
effect that Lord was not the lowest bidder. Little need
be said upon this subject as our views are that in the
absence of any allegation or showing of fraud or collusion
on the part of the awarding authorities, which in this
case was the board of supervisors of the City and County
of Honolulu, the decision of the board is conclusive, the
presumption being that the board acted faithfully and
honestly and for the public good after due and full in-
vestigation of the matter. But stepping behind this pre-
sumption and investigating the merits of the question
we find no difficulty in approving the decision of the

board of supervisors in rejecting the bid of the Hawaiian Contracting Company for the reason that its figures were so indefinite, uncertain and contradictory as to justify the rejection of its bid because of irregularities contained therein. See 19 R. C. L. p. 1069 n 5; also *Maryland Paving Co.* v. *Mahool,* 110 Md. 397.

The validity of the contract with Mr. Lord is further attacked on the ground that the plans and specifications and the call for tenders were illegally changed at a late hour by a private communication from the city and county engineer to the prospective bidders, which change was not publicly or otherwise advertised. The letter of Mr. Cantin, the city and county engineer, of February 27, 1919, addressed to prospective bidders, wherein he attempted to call for supplemental bids for hauling cement and iron from Honolulu to the place of construction in case the U. S. quartermaster's corps or the City and County of Honolulu did not do the hauling, was entirely unauthorized and outside of the scope of the duties of the city and county engineer. This communication was sent out long after the call for tenders based upon the plans and specifications had been published and was an unauthorized act on the part of the engineer and should have been ignored by the bidders. Of course plans and specifications for work done by contract, requiring competitive bidding therefor, cannot be changed after a call for bids has been published without readvertising but in any event the board of supervisors alone was authorized to change the plans and specifications and require supplemental bids and this it did not do, hence the action of the engineer in attempting to call for supplemental bids for hauling concrete and iron in case the same were not hauled by the United States government or the City and County did not and could not affect the plans and specifications as theretofore adopted and approved by the

proper authorities and could not affect the validity of the bids submitted nor of the contract entered into with the successful bidder.

Perhaps the issue upon which the appellee places the most reliance is that the specifications as to the time in which the work is to be completed are so indefinite and uncertain that a legal contract could not be based upon them.

The specifications provide *inter alia* that "The work shall be prosecuted in such manner as to complete, or to allow for the completion of the entire work contemplated in the pali to Hakipuu boundary section on or before two (2) years from the date of giving notice to commence as set forth in the preceding paragraph, including Sundays and holidays, and ordinary weather conditions, and any shortening or lengthening of the road to be constructed made necessary by lack or increase of funds shall decrease or increase the period allowed for construction proportionately as may be determined by the board." Provision is further made for extension of time should the work be delayed by causes not in the control of the contractor but such provision is not necessary to a discussion of the question before us. The portion of the specifications which gave rise to the issue under discussion is contained in the above quotation.

It is argued that as there are not sufficient funds to complete the whole work upon which bids were asked, and to do which two years are allowed, the length of time to which the contractor is entitled to complete the amount of work that can be done with the money available is indefinite and uncertain and cannot be definitely ascertained because he says no rule has been laid down by which the reduction in time is to be computed—that what the shorter time to be allowed shall be proportionate to is not stated and that the fixing of such shorter time is left to the arbitrary decision of the board.

If the contention of the appellee that the time in which the work must be completed is not contained in the specifications and no definite rule by which the time is to be computed is contained therein is correct then his argument that no legal contract can be based thereon is sound, but if the time in which the work must be completed is fixed or a rule is laid down by which it shall be computed his argument must fail as not being based upon the facts of this case.

It must be conceded that under our statute (section 1418 R. L. 1915) requiring competitive bidding for the expenditure of public funds where the sum to be expended shall be one thousand dollars ($1000) or more, and (section 1419 R. L. 1915) requiring that all such contracts be let to the lowest responsible bidder, in order to furnish a common standard for the competition either a reasonable time should be fixed in the specifications for the performance of the contract (or two or more alternative reasonable periods), or, if the bidders are left to name the proposed time of completion, the specifications should state the value of the difference in time between bids and thus furnish the means of reducing the bids to a common standard of measurement, or if one or more periods for performance are specified liberty may be given to the bidders to name a different period, the value of the difference in time being in such event also stated, or it should be specified that the award will be to the bidder (responsible) naming the lowest price irrespective of the time required by him for the performance of the contract. *Wilson* v. *Lord-Young Eng. Co.*, 21 Haw. 87-100.

In the case of *Gist* v. *Construction Co.*, 224 Mo. 369, 387-8, it was held that "the phrase 'shall fix the time within which such work shall be completed after,' etc., does not mean to fix the date at which the work shall

commence nor the date when it shall end. The very bowels of the text, therefore, import flexibility. The contractor under that provision having ten months time might complete his work within one week and that week the last one or the first one. We are of the opinion that the maxim, That is certain which can be made certain, has application and that the statute means no more than the language meant in the *Cricket* case, *supra,* to wit, *prescribe or fix the rule by which the time is to be determined."*

What then is to be said of that portion of the specifications in this case where it is provided that "any shortening or lengthening of the road to be constructed made necessary by lack or increase of funds shall decrease or increase the period allowed for construction proportionately as may be determined by the board"? The necessity for shortening the road to be constructed could only arise from the fact that sufficient funds were found to be not available to complete the contemplated work and in that event the time to be allowed the contractor must be reduced proportionately and we think the only reasonable construction of the language used and the context is that the two years allowed for completing the whole of the contemplated work shall be reduced in the same proportion that the money available bears to the amount of the bid. The remaining language "as may be determined by the board" means no more than that the board is the authority which in behalf of the City and County shall adjust the matter of the reduction of time. The board will be bound in its computation of the time to be allowed by the rule laid down in the specifications and would not be justified in arbitrarily fixing the time to be allowed the contractor.

The appellee insists that there has been no legal contract entered into between the City and County and the

appellant because, as he contends, the specifications have not been approved by the superintendent of public works as is required by Act 215 S. L. 1917, as amended. Section 4 of said act provides that "No moneys shall be expended under items 18 to 25, both inclusive, * * * until the methods, materials, plans and specifications proposed to be used for the construction or reconstruction of any road or roads intended to be paid for in whole or in part with moneys provided by said items shall first be passed upon and approved by the superintendent of public works." Item 21 appropriates $500,000 for the road in question and therefore comes within the section above quoted. Upon the title page of the plans the approval of the superintendent of public works is endorsed, so the approval of the plans is not questioned. The plans and specifications were submitted to the superintendent of public works together for his approval, having already been approved by the military authorities by an endorsement upon the title page of the plans only. In a letter written by the superintendent of public works to the city and county engineer a few days after he had endorsed his approval upon the plans certain changes in the wording of the specifications were suggested, as he has testified, to make them conform to recognized engineering terms. His endorsement was endorsed on the plans December 21, 1918, and this letter was written December 27, 1918. On January 24, 1919, the city and county engineer wrote to the superintendent of public works the following letter:

"It is my intention to recommend to the board of supervisors on the 28th inst. that the clerk of the City and County of Honolulu be authorized to call for tenders for the belt road permanent improvement according to the methods, materials, plans and specifications heretofore brought to your attention and approved by you as provided in Act 215 of the Session Laws of 1917. It is

my intention to recommend that the call be for a period of thirty (30) days from the date of the first insertion of the advertisement therefor.

"I assume that all the matters covered by said Act 215 which are subject to your approval prior to such call have been fully complied with as appears in the files of your office and this office relating thereto. If you have anything further to present relating to this matter prior to such call will you kindly do so either to this office or before the board of supervisors at the date above mentioned."

To which the superintendent made the following reply on January 28, 1919, by letter:

"Replying to your inquiry of January 24th in reference to the new Belt Road, I beg to advise you that to the best of my knowledge, I have complied with all of the provisions required of me by Act 215."

Act 215 requires the plans and specifications to be approved by the superintendent of public works but does not specify in what manner such approval shall be expressed. The superintendent has testified that he did and does approve the plans and specifications and we think that his testimony to that effect, together with his endorsement on the plans and his letter of January 28, above quoted, constitute a substantial compliance with the provision of the law requiring his approval.

It is also contended that the specifications and proposals are ambiguous, indefinite and uncertain by reason of the fact that unit prices are called for on the method of handling excavations instead of on the various characters of materials to be excavated. In the proposals unit prices are called for on "Hand Excavation;" "Hauled Hand Excavation;" "Scraper Excavation;" "Hand Wasted Blasted Excavation;" "Hauled Blasted Excavation" and "Mechanical Shovel Excavation," etc., and it is contended that this method of calling for proposals renders the

proposals made ambiguous, indefinite and uncertain. However, the specifications set forth the character of materials and conditions under which they are to be removed, which shall determine the method to be used in their removal, this to be determined by the engineer. This reduces the specifications and the proposals to the same degree of certainty that can be had in any proposal for unit prices on excavations. The quantity of any given material to be removed is bound to be to some extent uncertain until it has actually been excavated but this does not render a contract based upon such proposal invalid. *Chicago* v. *Duffy*, 179 Ill. 447; *Shippey et al.* v. *U. S.*, 49 Ct. Cl. 151.

It is not uncommon, as shown by the reported cases, for the specifications for excavation work, as they do in this case, to define what shall constitute a certain character of excavation, as "Rock Excavation;" "Hardpan Excavation" and "Earth Excavation" and making the decision of the engineer in charge final as to the character and quality of the work done, the nature of the material removed and the proper method of removing it. *Fitzgibbon* v. *U. S.*, 52 Ct. Cl. 164, 169; *Toomey Bros.* v. *U. S.*, 49 Ct. Cl. 172; *McBride Electric Co.* v. *U. S.*, 51 Ct. Cl. 448, 455.

All of the issues involved in this proceeding have been fully and carefully considered and are resolved in favor of the validity of the contract between the contractor, Mr. Lord, and the City and County of Honolulu.

The decision therefore of the territorial auditor is reversed and he is hereby ordered to issue a warrant upon the treasurer of the Territory of Hawaii in favor of the appellant, E. J. Lord, for the amount of his said claim heretofore filed with the auditor.

*A. M. Cristy* and *A. G. Smith* (*Peters & Smith* and *A. M. Cristy* on the brief) for appellant.

Syllabus.

*J. W. Cathcart* (*Thompson & Cathcart* and *Frear, Prosser, Anderson & Marx* on the brief) for the auditor.

*M. F. Prosser* and *U. E. Wild* (*Frear, Prosser, Anderson & Marx* and *Thompson & Cathcart* on the brief) for J. D. McInerny.